Slip Op. 17-8

UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| IKEA SUPPLY AG,<br><br>                         Plaintiff,<br><br>v.<br><br>UNITED STATES,<br><br>                         Defendant,<br><br>and<br><br>ALUMINUM EXTRUSIONS<br>FAIR TRADE COMMITTEE,<br><br>                         Defendant-Intervenor. | Before: Richard W. Goldberg, Senior Judge<br>Court No. 15-00153 |

**OPINION AND ORDER**

[Plaintiff's motion for reconsideration is denied.]

Dated:  January 31, 2017

    *Kristen S. Smith*, *Arthur K. Purcell*, *Mark R. Ludwikowski*, and *Michelle L. Mejia*, Sandler Travis & Rosenberg, P.A., of Washington, DC, for plaintiff.

    *Douglas G. Edelschick*, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, DC, for defendant. With him on the brief were *Benjamin C. Mizer*, Principal Deputy Assistant Attorney General, *Jeanne E. Davidson*, Director, and *Reginald T. Blades, Jr.*, Assistant Director. Of counsel on the brief was *James H. Ahrens II*, Office of the Chief Counsel for Trade Enforcement and Compliance, U.S. Department of Commerce.

    *Alan H. Price*, *Robert E. DeFrancesco, III*, and *Derick G. Holt*, Wiley Rein LLP, of Washington, DC, for defendant-intervenor.

    Goldberg, Senior Judge: On July 5, 2016, this court sustained the determination of the U.S. Department of Commerce ("Commerce") that the scopes of two antidumping and countervailing duty orders ("the Orders") include towel racks imported by Plaintiff IKEA Supply

AG ("IKEA"). *See IKEA Supply AG v. United States*, 40 CIT __, 180 F. Supp. 3d 1202 (2016). On August 4, 2016, IKEA invoked USCIT Rule 59 in moving for reconsideration of *IKEA Supply*. Pl. Mot. for Reconsideration of J. on the Agency R., ECF No. 37; Br. in Supp. of Pl. Mot. for Reconsideration of J. on Agency R., ECF No. 37-1 ("IKEA Br."). On October 31, 2016, Defendant United States ("the Government") filed a response in opposition to IKEA's motion for reconsideration. Def. Resp. to Pl. Mot. for Reconsideration, ECF No. 45 ("Gov't Resp."). Defendant-Intervenor Aluminum Extrusions Fair Trade Committee joined the Government's opposition to IKEA's motion. Def.-Intervenor Resp. to Pl. Mot. for Reconsideration, ECF No. 46. The court presumes familiarity with the prior proceeding and *IKEA Supply* and, for the reasons set forth below, denies IKEA's motion for reconsideration.

## BACKGROUND

On January 16, 2014, IKEA requested a scope ruling from Commerce concerning two of its imported towel racks, which IKEA argued "fall outside the scope of the antidumping and countervailing duty orders on aluminum extrusions from the People's Republic of China." IKEA Letter to Commerce Requesting Scope Ruling 1–2, PD 1 (Jan. 16, 2014) ("IKEA Letter"). IKEA attached pictures of the two racks to the scope ruling request. IKEA Letter attach. 2.

In its Final Scope Ruling, Commerce described the two IKEA towel racks at issue and determined that the Orders cover the two towel racks. Commerce explained that the "Model 44640484 towel rack is comprised of an extruded aluminum rack and two steel brackets," which constitute fasteners. Final Scope Ruling 12, PD 39 (Apr. 28, 2015). Commerce explained that the other towel rack, "Model 14639284[,] is comprised of a series 6 aluminum extrusion and a plastic gasket." Final Scope Ruling 2. Put differently, Commerce found "that the Model 14639284 towel rack consists of an aluminum extrusion . . . and a fastener (*i.e.*, a plastic

gasket)." Final Scope Ruling 12. In short, Commerce found that each towel rack includes an aluminum extrusion and fasteners, and does not include any "non-aluminum extrusions beyond fasteners." Final Scope Ruling 11–13 ("[T]he IKEA towel racks at issue contain only one piece of extruded aluminum, aside from fasteners (*i.e.*, plastic gaskets or steel brackets.)"). At the administrative level, IKEA never disputed the list of parts in the description.

In its motion for judgment on the agency record before this court, IKEA described its towel racks as "manufactured from aluminum extrusions as a final, finished product ready for immediate retail sale and use. The towel racks are packaged with all parts necessary for their installation, including, depending on the model, a plastic gasket or two steel brackets." Mem. in Supp. of Pl. Mot. for J. on Agency R. 3, ECF No. 30-1 (citations omitted). IKEA also explained that "the towel racks simply need to be taken out of the package to be used for their intended use; no further manufacturing or finishing is necessary. The towel racks include a plastic fastener or steel brackets and have aluminum extrusions as parts." *Id.* at 8 (citation omitted). In summary, according to IKEA, the subject goods are a "combination of parts—the towel rack and a plastic gasket or steel brackets." *Id.* at 15.

In the Government's response to IKEA's motion for judgment on the agency record, it stated that "Commerce made several important factual findings in the Scope Ruling. Commerce found that IKEA's towel racks consist only of a single piece of extruded aluminum along with one plastic gasket or two steel brackets that are used to hold the towel rack in place." Def. Resp. to Pl. Mot. for J. on Agency R. 7, ECF No. 32 (citation omitted). The Government declared that "[t]here is no dispute that IKEA's towel racks consist of a single piece of extruded aluminum, along with one plastic gasket or two steel brackets, which are used to affix the towel rack to a wall." *Id.* at 8. IKEA never disputed the Government's description until after *IKEA Supply*.

After *IKEA Supply*, IKEA moved for reconsideration, citing two alleged problems with the court's opinion.  First, IKEA argues that the court predicated *IKEA Supply* on an incorrect description of its towel racks, making the opinion incorrect.  IKEA Br. 2–4.  IKEA claims that Model 14639284 "is comprised of a steel bar and four permanently attached hooks" that are "fabricated and assembled onto the bar after the extrusion process of the single bar."  IKEA Br. 3.  *IKEA Supply* failed to consider these hooks.  IKEA claims that Model 44640484 "is comprised of five parts: a steel bar, two end caps and two steel disks."  IKEA Br. 3.  *IKEA Supply* likewise failed to consider all these parts.  Second, IKEA argues that an opinion from this court in a different case, issued after *IKEA Supply*, constitutes an intervening change in controlling law that requires reconsideration of *IKEA Supply*.  IKEA Br. 8–9.

## **DISCUSSION**

This court has discretion to grant or to deny a motion for reconsideration.  "The major grounds justifying a grant of a motion to reconsider a judgment are an intervening change in the controlling law, the availability of new evidence, the need to correct a clear factual or legal error, or the need to prevent manifest injustice."  *Ford Motor Co. v. United States*, 30 CIT 1587, 1588 (2006).  However, "[t]he purpose of a rehearing is not to relitigate the case."  *Asociacion Colombiana de Exportadores de Flores v. United States*, 22 CIT 724, 725, 19 F. Supp. 2d 1116, 1118 (1998).  Rather, the purpose is "to direct the Court's attention to some material matter of law or fact which it has overlooked in deciding a case, and which, had it been given consideration, would probably have brought about a different result."  *Target Stores, Div. of Target Corp. v. United States*, 31 CIT 154, 159, 471 F. Supp. 2d 1344, 1349 (2007) (citation omitted).  Moreover, "arguments raised for the first time on rehearing are not properly before the court for consideration when prior opportunity existed . . . for the moving party to have

adequately made its position known." *United States v. Matthews*, 32 CIT 1087, 1089, 580 F. Supp. 2d 1347, 1349 (2008) (citation omitted).

As explained above, IKEA maintains (1) that "an inaccurate description" of IKEA's towel racks caused this court to incorrectly sustain Commerce's scope ruling, IKEA Br. 3–8, and (2) that a "recent decision of this court is inconsistent with" *IKEA Supply*, IKEA Br. 8.  In other words, IKEA insists that reconsideration is justified on the following grounds: "the need to correct a clear factual or legal error," "an intervening change in the controlling law," and the "need to prevent manifest injustice." *Ford Motor*, 30 CIT at 1588.  But there was no error, no change in controlling law and, as a result, no manifest injustice.

Admittedly, *IKEA Supply* did not consider the two end caps, the two steel disks, and the four permanently attached hooks discussed above.  Even so, this was not error.  The two end caps, the two steel disks, and the four hooks were not part of the description of the towel racks. Until the motion under review, neither Commerce, the Government, nor IKEA included either the caps, the disks, or the hooks in the description of the towel racks.  IKEA could have challenged the accuracy of the towel rack description that Commerce used if IKEA believed that it could prevail under a towel rack description that, contrary to the description used, included the caps, disks, and hooks.  Yet IKEA raised no such challenges concerning the new parts at either the administrative level or before this court.  The exhaustion doctrine precludes IKEA from raising any challenges to the description now for the first time, and IKEA's initial failure to raise the issue before this court likely also amounts to a waiver of any challenge in a motion for reconsideration.[1]  As a result, the court committed no error in not acknowledging these new parts in *IKEA Supply*.

---

[1] The "exhaustion doctrine requires a party to present its claims to the relevant administrative agency for the agency's consideration before raising these claims to the Court." *Meridian Prods., LLC v. United States*, 39 CIT

IKEA's second argument regarding an intervening change in controlling law is similarly unconvincing. IKEA cites *Meridian Products, LLC v. United States*, 40 CIT __, 180 F. Supp. 3d 1283 (2016), as an intervening change in controlling law. However, *Meridian* is not an intervening change in controlling law. *See Algoma Steel Corp. v. United States*, 865 F.2d 240, 243 (Fed. Cir. 1989) (explaining that an opinion from a judge on this court does not bind the other judges on this court). For that reason, IKEA's second basis for requesting reconsideration also fails, regardless of whether *Meridian* contradicted *IKEA Supply*.[2]

Accordingly, because IKEA provides no adequate basis for reconsideration, it is hereby ORDERED that IKEA's motion for reconsideration is DENIED.

/s/ Richard W. Goldberg
Richard W. Goldberg
Senior Judge

Dated: January 31, 2017
New York, New York

---

, __, 77 F. Supp. 3d 1307, 1312 (2015) (citation omitted). The reason is simple: "[C]ourts should not topple over administrative decisions unless the administrative body not only has erred but has erred against objection made at the time appropriate under its practice." *United States v. L.A. Tucker Truck Lines, Inc.*, 344 U.S. 33, 37 (1952). Accordingly, the exhaustion doctrine furthers two interests: "It allows the administrative agency to perform the functions within its area of special competence (to develop the factual record and apply its expertise), and—at the same time—it promotes judicial efficiency and conserves judicial resources, by affording the agency the opportunity to rectify its own mistakes (and thus to moot controversy and obviate the need for judicial intervention)." *Ta Chen Stainless Steel Pipe, Ltd. v. United States*, 28 CIT 627, 644, 342 F. Supp. 2d 1191, 1206 (2004).

Here, IKEA's failure to raise issues deprived Commerce of the ability to develop the factual record and to apply its expertise to the developed record. Exhaustion doctrine exists to address precisely this scenario. Further, no exhaustion exceptions apply here.

[2] IKEA raised additional arguments all predicated on the new product description discussed above. However, IKEA failed to exhaust its administrative remedies on the new product description. Because IKEA premised the additional arguments on this non-exhausted product description, the court likewise declines to consider the additional arguments.